# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

ERICSON GROUP, INC., *et al.*,

    Plaintiffs,

v.

DIGITAL SPORTS GRAPHICS, INC., *et al.*,

    Defendants.

Case No. 2:05-cv-927-LDG (RJJ)

**ORDER**

    The plaintiffs, Ericson Group, Inc., and Greg Ericson (collectively Ericson), bring this suit for patent infringement and other claims against the defendants, Digital Sports Graphics, Inc., d/b/a Digital Sign Graphics, and Adam Weisberg (collectively DSG). DSG answered and alleged several counterclaims. DSG subsequently moved for leave to add additional counterclaims.

    Before the court granted DSG leave to add counterclaims, Ericson moved for partial summary judgment (#52) as to those proposed counterclaims. DSG opposed the motion (#58) to the extent it addressed counterclaims that were already filed, and moved to stay briefing (#57) as to those counterclaims which it had not yet been granted leave to file.

Ericson also moved for partial summary judgment on (1) Direct Patent Infringement by DSG, (2) Inducement of Patent Infringement by Adam Wiesberg, and (3) Willful Patent Infringement and Attorney's Fees.  DSG did not file an opposition to the motion, but instead moved to stay briefing pending resolution of its motion on the validity of the patent-at-issue.

In addition, Ericson also moved for partial summary judgment on its claim for breach of contract and for an accounting of damages related to the breached contract (#54).  DSG has opposed that motion (#60).[1]

Finally, as noted, DSG has moved for summary judgment (#62), arguing that the patent-in-suit is invalid because (a) it was sold and publicly used more than one year prior to the patent's application date, and (b) the patent application failed to name two co-inventors.  DSG also seeks summary judgment that the patent-in-suit is unenforceable because Ericson failed to disclose these material facts to the United States Patent and Trademark Office (USPTO).  Ericson has opposed the motion (#77).  Having considered the papers, pleadings, and record, the court will grant DSG's motion, finding that the patent is invalid and unenforceable, and will deny Ericson's motions.

Motion for Summary Judgment

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2)

---

[1] In its opposition, DSG has "countermoved" for summary judgment on the same issues addressed in Ericson's motion.  DSG did not, however, file its paper separately as a motion, as is required by the Court's electronic docketing system, but filed it only as a response to Ericson's motion.  Accordingly, the "countermotion" is not properly before the court for decision.

2

that the court may grant judgment as a matter of law.  Fed. R. Civ. Pro. 56(c);  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one required to prove a basic element of a claim.  *Anderson,* 477 U.S. at 248.  The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 323.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*.  "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Conversely, when the burden of proof at trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro. 56(e).  As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party."  *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The allegations or denials of a pleading, however,

3

will not defeat a well-founded motion. Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

<u>Partial Summary Judgment as to Proposed Claims</u>

While the Federal Rules of Civil Procedure do not limit how promptly a defending party may seek summary judgment on a claim or counterclaim filed against it, plainly a motion for summary judgment is premature when it seeks adjudication of an unfiled claim or counterclaim. Accordingly, the court will deny Ericson's motion for summary judgment to the extent it seeks summary judgment of those counterclaims that had yet to be filed when Ericson filed its motion.

As to the existing claims, DSG readily met its burden of demonstrating that triable issues of fact remain.

<u>Validity and Enforceability of '301 Patent</u>

On October 10, 2001, Greg Ericson filed a patent application for "Bi-Directional Visual Display Assembly," resulting in the issuance of United States Patent No. 6,578,301 (the '301 patent, or patent-in-suit). Erison named only himself as the inventor of the patent-in-suit.

<u>Public Use and Sale Prior to Critical Date</u>

A person is precluded from obtaining a patent for any invention that was in "public use or on sale in this country" more than a year prior to the date of the patent application. 35 U.S.C. §102(b). As Ericson filed his patent application on October 10, 2001, the "critical date" is October 10, 2000. To determine whether a claimed invention was in public use or on sale prior to the critical date, this court looks to whether it was the subject of a commercial offer for sale, and whether it was ready for patenting at the time of the offer for sale. *Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 67 (1998). DSG has offered evidence that Ericson sold twenty signs to Sam's Town in August 2000, prior to the critical date. Sam's Town then placed at least some of those signs into public use for several months. A

4

comparison of the signs sold to Sam's Town and the claimed invention establishes that the claimed invention was reduced to practice in those signs.  While "[a] patentee may negate a showing of public use by coming forward with evidence that his use of the invention was experimental," *Lough w. Brunswick Corp.,* 86 F.3d 1113, 1120 (Fed. Cir. 1996), Ericson has failed to offer any competent evidence that the sale of twenty signs to Sam's Town was experimental.  He has not offered any evidence that he controlled testing or kept progress records.  Indeed, he admitted not even having seen the signs that were delivered to Sam's Town.  Further, while he suggests that the signs were only used for five minutes, DSG offers competent evidence that at least some of the signs were used for several months.  Accordingly, the '301 patent is invalid as the claimed invention was reduced to practice, offered for sale, sold, and placed into public use more than one year prior to the date of the patent application.

<u>Unnamed Co-inventors</u>

A patent applicant cannot obtain a patent for a claimed invention that he did not invent.  35 U.S.C. §102(f).  If an invention is jointly made by more than one person, then all co-inventors must jointly apply for the patent.  35 U.S.C. §116.  In short, a condition of patentability is naming the correct inventor or co-inventors, and the failure to do so renders a patent invalid.  *See, Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349-50 (Fed. Cir. 1998).  The burden rests upon DSG to offer clear and convincing evidence that Ericson collaborated with other persons to invalidate the '301 patent.

Through deposition testimony, DSG has offered clear and convincing evidence that Ericson collaborated with Niki Anthony and Bob Baron.  Both Ericson and Anthony testified that together they came up with the idea for the sign.  Both Ericson and Baron, who assisted in reducing the invention to practice, testified that Baron offered input.  Of particular note, Ericson acknowledged that Baron suggested moving the legs of the signs to the end.  Ericson's drawing, faxed to Baron, places the legs away from the ends of the

signs. The signs sold to Sam's Town have the legs placed at the ends, and not in the middle as depicted in Ericson's drawing. The claimed invention places the legs at the ends of the signs.

Ericson's and Anthony's affidavits contradicting their deposition testimony do not raise a triable issue of fact whether Anthony or Baron were co-inventors. "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony . . . ." *Kennedy v. Allied Mutual Ins. Co.,* 952 F.2d 262, 266-67 (9th Cir. 1991). Accordingly, as both Anthony and Baron were co-inventors of the '301 patent, and as neither was named as a co-inventor, the '301 patent is invalid.

<u>Failure to Disclose Material Information in Patent Application</u>

"Information must be disclosed to the USPTO when it is material to patentability." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 120 F.3d 1253, 1257 (Fed. Cir. 1997). "Information is 'material' when there is a substantial likelihood that a reasonable examiner would have considered the information important in deciding whether to allow the application to issue as a patent." *Molins PLC v. Tektron, Inc.,* 48 F.3d 1172, 1179 (Fed. Cir. 1995). A sale of a claimed invention prior to the critical date is inherently material information. *See, LaBounty Mfg. Inc. v. United States Int'l Trade Comm'n*, 958 F.2d 1066, 1075-76 (Fed. Cir. 1992). Ericson did not disclose to the USPTO that he sold twenty signs, which signs had reduced the claimed invention to practice, to Sam's Town in August 2000, prior to the critical date. Inventorship is a critical requirement for obtaining a patent, such that an examiner must reject an application for improper inventorship. *PerSeptive Biosystems, Inc. v. Pharmacia Biotech, Inc.*, 225 F.3d 1315, 1321-22 (Fed. Cir. 2000). Ericson did not disclose to the USPTO that Anthony and Baron were co-inventors of the claimed invention.

An intent to mislead a patent examiner may be established where "a patent applicant knew, or should have known, that withheld information would be material to the

PTO's consideration of the patent application." *Critikon*, 120 F.3d at 1256.  Ericson's deposition testimony establishes that he knew that Anthony and Baron were co-inventors, and that he had sold twenty signs to Sam's Town prior to the critical date.

While each failure to disclose appears sufficient to find inequitable conduct, the combination of both failures to disclose establishes inequitable conduct.  Accordingly, these failures to disclose render the '301 patent unenforceable.

<u>Infringement, Inducement of Infringement, Willful Infringement</u>

Having found that the '301 patent is invalid, the court will deny Ericson's motion for partial summary judgment on direct infringement, inducement of infringement, and willful infringement.

<u>Breach of Contract</u>

On July 9, 2003, Ericson and Weisberg exchanged the following three e-mails.  The first was from Weisberg to Ericson:

> As of the last time we spoke prior to the 4th of July weekend, I offered you $50 per topper on future sales.  This offer still stands and I hope you will find it fair and reasonable.  We can discuss this issue further when I return, I suggest that you have your attorney draft a letter with regards to the fee, rights of patent use, and other pertinent information for our agreement.  I will then have my attorney review it and we can get this wrapped up.  I will be available in my office by Monday the 21st of July if you would like to discuss this further prior to drafting a contract.
> I hope all is well, and I look forward to concluding this agreement.

Ericson responded:

> I have no desire to get into a long drawn-out battle with DSG.  Let's split the difference . . . $75 per sign produced.

To which Weisberg replied:

> That's fine, $75 per topper sold from today forward.  I will track and pay you quarterly.
> Get me the documents ASAP and I will review and sign them when I return.  Try and keep the contract simple so we don't have any more issues to negotiate.  The contract should cover my obligation to pay and report quarterly to you and your granting of all rights under your patent for past and future sales, ETC.
> I am glad we could reach an agreement and I look forward to seeing the contract.

Over the following eighteen months, Ericson and Weisberg continued to negotiate the terms of the agreement.

Whether this three e-mail exchange resulted in a contract is a question of fact, particularly given Weisberg's response included a term not previously agreed upon ("track and pay you quarterly"), and his instruction to "keep the contract simple so we don't have any more issues to negotiate." The subsequent year-and-a-half of negotiations further suggest that an agreement was not reached. Accordingly, the court will deny Ericson's motion for partial summary judgment as to the claim for breach of contract.

Therefore,

THE COURT **ORDERS** that Defendants' Motion for Summary Judgment of Patent Invalidity and Unenforcability (#62) is GRANTED.

THE COURT FURTHER **ORDERS** that Plaintiffs' Motion for Partial Summary Judgment on Defendants' 4th, 5th, 6th, 7th, 8th, 9th, 10th, and 11th Proposed Counterclaims (#52) is DENIED on the merits to the extent it addresses counterclaims that were filed at the time Plaintiffs filed their motion, and is DENIED without prejudice as premature as to those counterclaims that were proposed at the time the Plaintiffs filed their motion. Plaintiffs are granted leave to re-file their motion, not later than twenty days after this Order is Entered and Served, with respect to that portion of the motion that is denied without prejudice.

THE COURT FURTHER **ORDERS** that Plaintiffs' Motion for Partial Summary Judgment on (1) Direct Patent Infringement by DSG, (2) Inducement of Patent Infringement by Adam Wiesberg, and (3) Willful Patent Infringement and Attorneys Fees (#53) is DENIED as moot.

THE COURT FURTHER **ORDERS** that Plaintiffs' Motion for Partial Summary Judgment on Breach of Contract Claim and on Claim for Accounting (#54) is DENIED.

DATED this ___29___ day of September, 2007.

_____
Lloyd D. George
United States District Judge